**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA     :
     :
    -against-          :
     :
JOSE LUIS DAVILA SANTACRUZ,    :
     :
           Defendant.  :
------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/26/22
```

No. 21 Cr. 754 (JFK)

**OPINION & ORDER**

<u>APPEARANCES</u>

FOR DEFENDANT JOSE LUIS DAVILA SANTACRUZ:
    Mark B. Gombiner
    FEDREAL DEFENDERS OF NEW YORK

FOR THE UNITED STATES OF AMERICA:
    Rushmi Bhaskaran
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Defendant Jose Luis Davila Santacruz's

("Santacruz") motion to dismiss the superseding indictment

pursuant to 18 U.S.C. §§ 3161(c)(1) and 3162(a)(2).  In his

motion, Santacruz argues that a 115-day period between his

arrest in the District of Arizona and his arraignment in

Southern District of New York violated his statutory and

constitutional rights to a speedy trial.  Santacruz additionally

argues that pursuant to 18 U.S.C. § 3164, he must be released

from pre-trial detention because his trial did not commence

within ninety days of his arrest.  For the reasons set forth

below, Santacruz's motion is DENIED.

    **I. Background**

1

The superseding indictment ("Indictment") in this case charges Santacruz and his co-defendant, Carlos Roberto Hernandez Acosta ("Acosta"), with one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(a)(2)(A).  (Superseding Indictment, ECF No. 5.[1])  The charges stem from their alleged participation in a year-long conspiracy to launder millions of dollars of narcotics proceeds from the United States to Mexico.  (Complaint, ECF No. 1.)

On November 5, 2021, Magistrate Judge Sarah L. Cave of this District issued arrest warrants for Santacruz and Acosta on the basis of a criminal complaint ("Complaint") that had been filed earlier that day.  (Arrest Warrant, ECF No. 3.)  On December 3, 2021, Acosta was arrested in the District of Arizona.  Upon his arrest, Acosta was ordered detained and removed to this District.  On December 13, 2021, Acosta was indicted in this District on a single count of conspiracy to commit money laundering.  (Docket No. 21-cr-754-JFK-1, ECF No. 3.)

On January 29, 2022, shortly after he entered the United States from Mexico, Santacruz was arrested in the District of Arizona.  (Government Memorandum in Opposition ("Gov't Opp'n"), ECF No. 29, Ex. A.)  Two days later, Santacruz was presented and assigned counsel.  (Id.)  Following Santacruz's presentment,

---

[1] Unless otherwise noted, all docket entry citations in this Opinion and Order refer to Santacruz's criminal docket, No. 21-CR-754-JFK-2.

Magistrate Judge Leslie Bowman of the District of Arizona
scheduled an identity and removal hearing for February 3, 2022.
(Id.)  On January 31, 2022, Santacruz, through counsel, waived
his rights to both hearings and consented to detention.  (Id.)
On February 3, 2022, Magistrate Judge Jacqueline Rateau of the
District of Arizona ordered Santacruz removed to this District.
(Id.)  By email dated February 3, 2022, the Federal Defenders of
New York ("Federal Defenders") advised the Government that
Santacruz had "reached out for representation in advance of his
arrival" and noted that they "will begin working with him."
(Gov't Opp'n, Ex. C.)  The Federal Defenders additionally noted
that as a result of their representation of Santacruz, they
would be unable to represent Acosta when he arrived in this
District.  (Id.)

On February 7, 2022, while both Acosta and Santacruz were
waiting to be transported to New York, a federal grand jury in
this District returned a superseding indictment charging both
defendants with money laundering conspiracy.  (Superseding
Indictment, ECF No. 5.)  On February 11, 2022, the Government
provided Santacruz's attorney with a copy of the complaint and
advised him that the matter had been assigned to the Court as 21
Cr. 754.  (Gov't Opp'n, Ex. D.)

Acosta arrived in this District on February 23, 2022, just
under three months after his arrest.  That day, Acosta was

presented and arraigned before the Magistrate Judge Gabriel W. Gorenstein.  On March 15, 2022, the Court held an initial pretrial conference in this case, which was attended by the Government, Acosta, and Acosta's attorney.  During the conference, the parties discussed discovery access issues at Essex County Jail, where Acosta was being detained.  (Docket No. 21-cr-754-JFK-1, ECF No. 13 at 3:3–6:9.)  The Court additionally asked the Government to "make inquiry concerning the likelihood of getting the co-defendant, Mr. Santacruz, here, certainly by May 17, because [the Court would] like to have both defendants together." (Id. at 7:12–22.)

In its memorandum in opposition to the instant Motion ("Memorandum in Opposition"), the Government represents that "three weeks before the conference . . . scheduled for May 17, 2022, the Government learned that [] Santacruz had still not arrived in the District."  (Gov't Opp'n at 4.)  On April 26, 2022, the United States Marshals Service (the "USMS" or the "Marshals") informed the Government that Santacruz's removal request had been inadvertently cancelled due to an error in the District of Arizona.  (Id. at 5.)  According to the Government, "the USMS office in Arizona never received the removal order from the district court in Arizona, and as such, the removal order was not processed until the Government followed up with the USMS." (Id. at 5 n.1.)  The Government represents that "on

4

the assumption that transport time for an inmate located in the
southwestern United States to arrive in this District would
take, on average, six weeks during the pandemic, . . . Santacruz
should have arrived in the District in mid-March 2022.  Based on
that estimate, his transport was delayed by approximately ten
weeks."  (Id. at 5.)  On May 17, 2022, on Acosta's motion, the
Court adjourned this matter until July 6, 2022, and "excluded
[time] under the Speedy Trial Act, 18 U.S.C. § 3161(h)(7)(A)."
(Docket No. 21-cr-754-JFK-1, ECF No. 19.)

Santacruz arrived in this District on May 24, 2022, and he
was arraigned the following day before Magistrate Judge Robert
W. Lehrburger.  During the arraignment, Magistrate Judge
Lehrburger asked the Government for its understanding of why
Santacruz's transfer had been delayed and inquired "whether
anything was overlooked so that we don't have further delays in
getting persons processed." (ECF No. 24 at 8:13-20.)  The
Assistant United States Attorney appearing at the presentment
responded that "there were some issues with the marshal
transport getting him up here," but noted that she "did not have
precise details to share with the Court" because she had not
"read up on it" prior to the proceeding.  (Id. at 8:22-9:3.)

The conference scheduled for July 6, 2022, was thereafter
adjourned by the Court to July 13.  At the conclusion of the
July 13 conference, the Court excluded time under the Speedy

Trial Act between July 13, 2022, and September 14, 2022.[2]
Santacruz filed the instant motion to dismiss the indictment on
July 29, 2022.  The Government filed its Memorandum in
Opposition on August 11, 2022.  Santacruz filed his Reply on
August 15, 2022.

## II. Legal Standard

In the event a defendant pleads not guilty, the Speedy
Trial Act ("STA") requires that "the trial of a defendant
charged in an information or indictment with the commission of
an offense shall commence within seventy days from the filing
date (and making public) of the information or indictment, or
from the date the defendant has appeared before a judicial
officer of the court in which such charge is pending, whichever
date last occurs."  18 U.S.C. § 3161(c)(1).  Accordingly, "[t]he
relevant triggering events under § 3161(c)(1) are the filing
date of the information or indictment and the defendant's first
appearance in the court where the indictment was filed, and the

---

[2] In response to a request from the Government, the Court entered a
written Order on August 12, 2022, memorializing its prior oral
findings that, pursuant to 18 U.S.C. § 3161(h)(7)(A), "the time
between March 15, 2022, to July 6, 2022, and July 13, 2022, to
September 14, 2022, is properly excluded under the Speedy Trial Act as
the ends of justice served by taking such action outweigh the best
interest of the public and the defendant in a speedy trial."  (Order
Clarifying Ends-of-Justice Finding (dated August 12, 2022), ECF No.
31); see also United States v. Breen, 243 F.3d 591, 596 (2d Cir. 2001)
("[A]lthough the district court must decide initially whether to grant
[an ends-of-justice] continuance, . . . the purposes of the statute
are satisfied by a subsequent articulation." (quoting United States v.
Brooks, 697 F.2d 517, 522 (3d Cir. 1982))).

STA seventy-day clock begins running after the later of those
two events." United States v. Lynch, 726 F.3d 346, 352 (2d.
Cir. 2013).

Certain periods of time are excluded from the seventy-day
clock. See 18 U.S.C. § 3161(h). Some exclusions operate
automatically, including, as relevant here, "delay[s] resulting
from the transportation of any defendant from another district .
. . except that any time consumed in excess of ten days from the
date an order of removal or an order directing such
transportation, and the defendant's arrival at the destination
shall be presumed to be unreasonable[,]" and, thus, not
excludable. 18 U.S.C. § 1361(h)(1)(F). In addition to the
automatic exclusions, "[a] district court may also grant
exclusions based on a 'finding[] that the ends of justice served
by taking such action outweigh the best interest of the public
and the defendant in a speedy trial.'" United States v.
Hoskins, No. 20-1061, 2022 WL 3330357, at *7 (2d Cir. Aug. 12,
2022) (quoting 18 U.S.C. § 3161(h)(7)(A)). "Although the [STA]
is clear that the findings must be made, if only in the judge's
mind, before granting the continuance, the STA is ambiguous on
precisely when those findings must be set forth in the record of
the case. However, this ambiguity is resolved, at the very
least the Act implies that those findings must be put on the
record by the time a district court rules on a defendant's

7

motion to dismiss under § 3162(a)(2)."  Zedner v. United States,
547 U.S. 489, 506-07 (2006) (cleaned up).  Accordingly, "time
may be properly excluded pursuant to an ends-of-justice finding
even if the court fails to 'utter the magic words ends-of-
justice at the time of ordering the continuance' where it is
clear that the court considered the underlying factors and
concerns."  Hoskins, 2022 WL 3330357, at *7 (quoting Breen, 243
F.3d at 597).

In sum, § 3161(c)(1) determines when the seventy-day speedy
trial clock begins and § 3161(h) sets forth the events or
activities that can pause or toll the running clock.  See United
States v. Matsushita, 794 F.2d 46, 50 (2d Cir. 1986).  Once the
clock starts, any period of time that is not excludable under §
3161(h) is counted toward "the computation of the seventy-day
limit."  Id.  If a defendant is not brought to trial within
seventy non-excludable days, the indictment must be dismissed.
See 18 U.S.C. § 3162(a)(2); see also United States v. Bert, 814
F.3d 70, 78 (2d Cir. 2016) ("If [the seventy-day] deadline is
not met, the [STA] provides that the indictment 'shall be
dismissed on motion of the defendant.'" (quoting 18 U.S.C. §
3162(a)(2))).

**III. Discussion**

In the instant Motion, Santacruz argues that his seventy-
day speedy trial clock began when he was indicted on February 7,

2022.  Santacruz contends that of the 107 days that elapsed
between his indictment and his arraignment in this District,
only 10 days are excludable under the STA as "delay resulting
from transportation of any defendant from another district."  18
U.S.C. § 3161(h)(1)(F).  According to Santacruz, because more
than seventy-days of non-excludable time has passed, the
Indictment must be dismissed with prejudice pursuant to 18
U.S.C. § 3162(a)(2).  Santacruz additionally argues that the
delay violated his Sixth Amendment right to a Speedy Trial, as
well as his statutory right to be tried within ninety-days of
his arrest.  The Government, in opposition, argues that only
seven days of non-excludable time have elapsed since Santacruz's
arrest on January 29, 2022.  The Government contends that
because 63 days remain on Santacruz's Speedy Trial clock, his
Motion should be denied.  The Court addresses the parties'
arguments in turn.

### A. The Seventy-Day STA Clock Has Not Expired

Santacruz's claim under § 3161(c)(1) is meritless because
his seventy-day clock began on May 25, 2022, the day he was
arraigned in this District.  As the Government notes in its
Memorandum in Opposition, Santacruz's argument to the contrary
is foreclosed by the Second Circuit's decision in United States
v. Lynch, 726 F.3d 346, 353 (2d Cir. 2013).

In Lynch, the Second Circuit held that when a defendant is charged by indictment, "the seventy-day period mandated by § 3161(c)(1) only begins after . . . the defendant's first appearance in the court in which he [is] charged on that indictment."  726 F.3d at 353.  The defendant in Lynch was arrested in New Jersey on an arrest warrant from the District of Connecticut on February 23, 2012.  Id. at 352.  On March 8, Lynch was transferred to the District of Connecticut.  Id. Lynch was indicted by a federal grand jury in Connecticut on March 13, and he was arraigned on the indictment on March 23, which constituted "his first appearance in the court in which he was charged on [the] indictment."  Id.  Lynch subsequently filed a pro se motion to dismiss the indictment under the STA, arguing, in part, that thirteen of the twenty-three days that elapsed between his arrest in New Jersey and his arraignment in Connecticut must be credited toward his STA clock because, under to 18 U.S.C. § 3161(h)(1)(F), "travel time in excess of ten days must be included in the [seventy-day] calculation[.]"  Id. at 350.  The district court denied Lynch's claim on the grounds that his seventy-day period did not begin until he was arraigned in Connecticut.

Affirming the district court, the Second Circuit held that in light of the plain language of § 3161(c)(1), the limitation on the exclusion for travel time contained in § 3161(h)(1)(F)

10

"only applies to travel time <u>after</u> [the defendant's] arraignment
. . . on the indictment" in the charging district.  <u>Id.</u>, at 352-
53 (emphasis in original).  The court reasoned that "although
Lynch was charged previously with a criminal complaint, it was
only when he appeared in the District of Connecticut for his
arraignment on the indictment that the seventy-day period for
trial commenced."  <u>Id.</u> at 353.  Because the twenty-three-day
period between his arrest and arraignment occurred before his
seventy-day clock began, the 10-day limit on the exclusion of
travel time was inapplicable to Lynch's case.  <u>Id.</u> at 352-53;
<u>see also</u> <u>United States v. Swinton</u>, 797 F. App'x 589, 596 (2d
Cir. 2019) (summary order) ("The 30-month period between [the
defendant's] October 2012 arrest and the filing of the April
2015 indictment is excluded because the [STA's] clock begins to
run after the indictment is filed, not before.").

The Second Circuit's holding in <u>Lynch</u> forecloses
Santacruz's claim.  As <u>Lynch</u> makes clear, § 3161(c)(1) provides
that if a defendant is indicted prior to their arrival in the
charging district, the STA clock starts from "the date the
defendant has appeared before a judicial officer of the court in
which such charge is pending[.]"  18 U.S.C. § 3161(c)(1).  Here,
Santacruz was arrested in the District of Arizona on a criminal
Complaint filed in this District.  Before he was removed to this
District, a superseding indictment was filed charging him with

11

the offenses outlined in the Complaint.  Santacruz, therefore, did not appear "before a judicial officer of the court in which such charge is pending" until he was arraigned in this District on May 25, 2022.  Accordingly, neither the seventy-day STA clock nor the 10-day travel limitation contained in § 3161(h)(1)(F) applied to Santacruz prior to May 25.

This conclusion is consistent not only with Lynch, but also with the reasoning of other circuit courts, which have recognized that the seventy-day STA clock begins to run when the defendant arrives in the district of prosecution.  See e.g., United States v. Grimes, 702 F.3d 460, 466 (8th Cir. 2012) ("[T]he STA time period does not begin to accrue until a defendant appears in the particular district court in which the charges against him are pending."); see also United States v. Palomba, 31 F.3d 1456, 1462 (9th Cir. 1994) (concluding that when "the indictment predates the initial appearance[,]" the 70-day clock does not begin until the defendant is arraigned in the charging district); United States v. Garcia, 995 F.2d 556, 559 (5th Cir. 1993) (noting that the "first appearance before a judicial officer of the court in which the indictment has been filed is the triggering event [for purposes of § 3161(c)(1)] . . . [and] the time between [] arrest and [] arraignment should be excluded in computing the seventy-day period."); United States v. Young, 814 F.2d 392, 395 (7th Cir. 1987) (STA clock did not

begin to run when defendant appeared in district court to which his case had been transferred under Rule 20, because it was not the court in which the charge against him was pending), <u>cert. denied</u>, 484 U.S. 838 (1987); <u>United States v. Hernandez</u>, 724 F.2d 904, 905 (11th Cir. 1984) ("When a defendant is indicted prior to his arrest, the seventy-day pretrial period runs from the date of his arraignment." (quoting <u>United States v. Haiges</u>, 688 F.2d 1273, 1274 (9th Cir. 1982))).

Santacruz's arguments in support of the opposite conclusion are unavailing.  First, he attempts to differentiate <u>Lynch</u> on the facts, arguing that the decision is "not controlling" because the defendant in <u>Lynch</u> was transported to the charging district and arraigned within twenty-three days of his arrest. Santacruz maintains that because the court in <u>Lynch</u> "was not faced with a situation where more than seventy days had elapsed before the defendant's transport[ation] to the charging district, <u>Lynch</u> does not grapple with the clash between Section 3161(c)(1) and Section 3161(h)(1)(F)."  (Mot. at 9.)  The specific circumstances of Lynch's arrest and transfer were not relevant to the Second Circuit's conclusion that under the plain language of § 3161(c)(1), "the seventy-day period mandated by [the STA] only begins after the later of the filing of the information or indictment and the defendant's first appearance in the court in which he was charged on that indictment."

13

Lynch, 726 F.3d at 353.  Moreover, even though Lynch was arraigned well within seventy-days of his arrest, the Second Circuit did grapple with the interplay between § 3161(c)(1) and § 3161(h)(1)(F), concluding that based on the language of the former, the latter "only applies to travel time after [the defendant's] arraignment . . . on the indictment" in the charging district.  Id. at 352–53 (emphasis in original). Contrary to Santacruz's claim, no portion of Lynch supports the proposition that the length of a pre-arraignment delay is relevant to determining when the seventy-day clock begins.

Second, Santacruz argues that the Court should simply decline to follow Lynch.  Santacruz contends that in light of the purpose and structure of the STA, "§ 3161(c)(1) does not control in situations where a defendant is arrested in another district."  (Mot. at 8.)  In support of this claim, Santacruz argues that "[i]f the Speedy Trial Act clock did not start until a defendant arrived in the charging district, Section 3161(h)(1)(F)'s requirement that transportation take place within ten days would be nullified."  (Id. at 7.)  Santacruz also maintains that "Congress . . . would not have enacted Section 3161(h)(1)(F) if it did not intend the clock to start when the order of removal is issued or when an out-of-district, in-custody defendant is first indicted[.]"  (Id.)  Because Lynch

14

controls the resolution of Santacruz's claim, the Court need not address these arguments.

The Court notes, however, that Santacruz's interpretation of the STA is directly refuted by the legislative history of the statute.  In Lynch, the Second Circuit cited United States v. O'Bryant, 775 F.2d 1528 (11th Cir. 1985), for the proposition that "[c]ase law and the legislative history of the [STA] also indicate that, where an indictment has been filed, the seventy-day clock does not begin running until a defendant has appeared in the court where the charges are pending."  Lynch, 726 F.3d at 353 (quoting O'Bryant, 775 F.2d at 1531) (internal quotation marks omitted).  In support of this conclusion, the court in O'Bryant noted the following:

> Where an indictment has previously issued, Congress clearly intended that the Speedy Trial Act clock would not begin running until a defendant appeared before a judicial officer in the district where charges were pending. The original [House] and [Senate] bills would have started the trial clock from the time of arrest. H.R. 7107, 92nd Cong., 1st Sess. 2 (1971); S.895, 92nd Cong., 1st Sess. (1971).  When the [Senate] bill was reported out of a Senate subcommittee, a provision had been added directing "an appropriate judicial officer . . . [to] set a day certain for trial."  S.754, 93rd Cong., 1st Sess. 2 (1973).  The 1974 House subcommittee and committee bills added the language starting the clock from where a defendant "has appeared before a judicial officer of the court in which such charge is pending."  H.R. 17409, 93rd Cong., 2d Sess. 3 (1974).  This language was retained when the bill was enacted.  Pub.L. 93-619, 93rd Cong. § 3161(c), 88 Stat. 2076, 2077 (1975); see generally, Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 (Fed. Judicial Center 1980).

Id. at 1531 n.3. As the legislative history makes clear, Santacruz's argument concerning the enacting Congress's intent and the operation of § 3161(c)(1) and § 3161(h)(1)(F) is meritless.[3]

In short, Santacruz's claim fails because less than seventy days of non-excludable time has elapsed since he was arraigned in the district of indictment. As noted above, Santacruz was first arraigned on May 25, 2022. At the time of his arraignment, the Court had already excluded time in this multi-defendant case until July 6, 2022, pursuant to 18 U.S.C. § 1361(h)(7)(A). On July 6, 2022, the Court adjourned the conference scheduled for July 6, 2022, to July 12, 2022. The Court's written adjournment did not expressly state that time was excluded under § 1361(h)(7)(A). Accordingly, the seven days between the original conference date and the July 13, 2022, conference were not excluded pursuant to the STA and sixty-three days remain on Santacruz's seventy-day clock. See United States v. Reese, 917 F.3d 177, 182 (3d Cir. 2019) (noting that although "district court may exclude time for the 'ends of justice'

---

[3] In Santacruz's Reply Brief, his attorney argues that "the notion that the travel-time exclusion for an order of removal applies only to travel 'after the defendant's arraignment in the district bringing the prosecution' reads like a passage lifted from Alice in Wonderland." (Reply at 3.) As O'Bryant makes clear, however, this "notion" reads more like a passage lifted from the Congressional Record. See 775 F.2d at 1531.

without citing the Act or using any of its magic words . . . the court [must] explain[] a valid factual basis for the continuance on the record when the continuance is ordered").

### B. Santacruz's Constitutional Speedy Trial Claim Fails

In his Motion, Santacruz argues that "[e]ven if the provisions of the [STA] did not apply" prior to his arraignment, the Indictment should still be dismissed "because the long and unjustified delay" between his arrest and arraignment violated his Sixth Amendment right to a Speedy Trial.  (Mot. at 10.) This claim is also meritless.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "The Supreme Court has identified four factors that must be balanced when considering whether the right has been violated: '[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.'"  United States v. Moreno, 789 F.3d 72, 78 (2d Cir. 2015) (quoting Barker v. Wingo, 407 U.S. 514, 530 (1972)).  The first factor operates as a "threshold inquiry."  United States v. Cabral, 979 F.3d 150, 157 (2d Cir. 2020).  Courts "will only consider the other Barker factors when the defendant makes a showing . . . 'that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay.'"  United States v.

Ghailani, 733 F.3d 29, 43 (2d Cir. 2013) (quoting Doggett v.
United States, 505 U.S. 647, 651–52 (1992)); see also Barker,
407 U.S. at 530 ("The length of the delay is to some extent a
triggering mechanism.  Until there is some delay which is
presumptively prejudicial, there is no necessity for inquiry
into the other factors that go into the balance.").  The
constitutional right to a speedy trial attaches when a defendant
is arrested or indicted, whichever comes first.  See United
States v. Black, 918 F.3d 243, 258 (2d Cir. 2019).  Accordingly,
"the relevant interval" for a defendant's "Sixth Amendment
speedy trial claim is from the first indictment or arrest to
trial."  Id. at 259.

     Once the full Barker analysis is triggered, "no one factor
is 'a necessary or sufficient condition to the finding of a
deprivation of the right of speedy trial,' and all 'must be
considered together with such other circumstances as may be
relevant.'"  Moreno, 789 F.3d at 78 (quoting Barker, 407 U.S. at
533).  The length of the delay, for example, "cannot alone carry
a Sixth Amendment claim."  Carbal, 979 F.3d at 157.
Accordingly, "Barker established a 'balancing test, in which the
conduct of both the prosecution and the defendant are weighed.'"
Vermont v. Brillon, 556 U.S. 81, 90 (2009) (quoting Barker, 407
U.S. at 530).

Here, the delay at issue falls well short of being
presumptively prejudicial.  Although "the definition of
'presumptively prejudicial' remains less than precise[,]"
Ghailani, 733 F.3d at 43, there is a "general consensus" in the
Second Circuit that a delay of more than eight months is
"presumptively prejudicial" and triggers further inquiry under
the Barker factors, see United States v. Vassell, 970 F.2d 1162,
1164 (2d Cir. 1992).  See also Doggett, 505 U.S. at 652 n.1
(noting that lower courts have generally applied the Barker
analysis to delays that "approach[] one year").  As of this
writing, approximately seven months have elapsed since Santacruz
was arrested in the District of Arizona.  Courts in this Circuit
have found similar delays to not be presumptively prejudicial.
See e.g., McCray v. Capra, No. 15 Civ. 01129 (JKS), 2017 WL
3836054, at *10 (N.D.N.Y. Aug. 31, 2017) ("Here, [the
defendant]'s trial began roughly 7 months after his initial
arrest.  [The defendant] thus fails to show that the delay is
'presumptively prejudicial.'"); Vasquez v. Walker, No. 01 Civ.
8032 (AKH), 2004 WL 594646 at *5 (S.D.N.Y. Mar. 25, 2004)
(concluding that a delay of "a little over six months" is not
presumptively prejudicial and "[t]hus, the [defendant]'s
constitutional speedy trial rights were not implicated"); United
States v. Bender, No. 02 Cr. 40 (JCF), 2003 WL 282184, at *2
(S.D.N.Y. Feb. 7, 2003) (finding that a delay of seven months

"falls well short of being presumptively prejudicial").
Accordingly, due to the limited duration of the delay, a full
analysis under Barker is unwarranted and Santacruz's
constitutional claim fail.  See United States v. Hernandez, No.
19 Cr. 97 (VM), 2020 WL 4547900, at *5 (S.D.N.Y. Aug. 5, 2020)
("Only when the defendant shows that delay 'between accusation
and trial has crossed the threshold dividing ordinary from
presumptively prejudicial delay' must the Court consider the
remaining [Barker] factors." (quoting Ghailani, 733 F.3d at
43)).

     Even if Santacruz could establish that the delay is
presumptively prejudicial, his Sixth Amendment claim would still
be denied because the remaining three Barker factors weigh
against dismissal.  As for the second factor—the reason for the
delay—the Supreme Court has instructed that "different weights
should be assigned to different reasons."  Barker, 407 U.S. at
531.  "A deliberate attempt to delay the trial" weighs heavily
in the defendant's favor, while "a valid reason, such as a
missing witness, should serve to justify appropriate delay."
Id.  A "neutral reason such as negligence or overcrowded courts
should be weighted less heavily but nevertheless should be
considered."  Id.

     Here, Santacruz argues that "there is no reason—other than
government misfeasance—for any . . . period of [the] delay."

20

(Mot. at 11.)  Specifically, he alleges that the "[g]overnment, for its part, ignored the Court's specific request to find out why [he] had not been brought to New York and when he finally did show up[,] [the Government] admitted that it didn't know the 'precise details' for the delay[.]"  (Id. at 13.)  Contrary to Santacruz's assertions, the record does not demonstrate that the Government acted in bad faith.  As noted above, the Government represents that the majority of the sixteen-week delay was caused by an "inadvertent mistake" in the District of Arizona. (Gov't Opp'n at 14.)  Once the Government learned of the mistake, it worked quickly to effectuate Santacruz's transfer to this District.  Santacruz's speculative claim that the delay was the product of Government "misfeasance" is insufficient to carry his burden under Barker.  See United States v. Stone, 510 F. Supp. 2d 338, 343 (S.D.N.Y. 2007) (noting that the defendant "has the burden at least to submit evidence that, if credited, would establish that the Barker factors weigh in his favor").  Looking at the record, the Court finds that the reasons for the delay in Santacruz's transfer were neutral and attributable to either government negligence or the COVID-19 pandemic.  See United States v. Akhavan, 20 Cr. 188 (JSR), 2021 WL 797806, at *5 (S.D.N.Y. Mar. 1, 2021) (finding delay due to the COVID-19 pandemic to be "a neutral reason [for delay] outside of the Government's control").  Accordingly, the second factor weighs

slightly in Santacruz's favor.  See Barker, 407 U.S. at 531
(noting that "neutral reason[s]" for delay such as "negligence
or overcrowded courts should be weighted" against the
government, albeit "less heavily" than "deliberate attempt[s] to
hamper the defense").

The third factor—the timeliness of the defendant's
assertion of the right to a speedy trial—also weighs in
Santacruz's favor.  A defendant has a "responsibility to assert
his right" to a speedy trial and the "failure to assert the
right will make it difficult for a defendant to prove that he
was denied a speedy trial."  Barker, 407 U.S. at 531-32.  When
considering the timeliness of a defendant's assertion of the
right, the court "must consider how and when a defendant knew of
the charges against him, if a defendant has obtained counsel,
and if a delay benefits the defendant and thus dissuades him
from invoking his right."  United States v. Tufino, No. 20 Cr.
81 (WMS), 2021 WL 1788521, at *4 (W.D.N.Y. May 5, 2021) (citing
Barker, 407 U.S. at 528-29).  Santacruz's counsel in Arizona, an
attorney from the Federal Public Defenders office in Tucson,
Arizona, was terminated shortly after Santacruz was ordered
removed to this District on February 3, 2022.  Santacruz,
therefore, lacked local representation during the delay and was,
according to his Motion, unaware of the indictment during that
period.  Shortly after Santacruz arrived in this District, his

defense counsel informed the Court of his intention to file the
instant Motion.  In light of the circumstances of Santacruz's
pre-arraignment detention and his prompt assertion of the right
to a speedy trial following his arraignment, the third factor
weighs in Santacruz's favor.  See United States v. Leaver, 358
F. Supp. 2d 255, 265 (S.D.N.Y. 2004) ("[W]here the defendant is
unaware of the indictment, he cannot 'be taxed for invoking his
speedy trial right only after his arrest.'" (citation omitted)).

     As for the final factor, Santacruz's constitutional claim
fails because he is unable to establish prejudice from the pre-
trial delay.  "The Supreme Court has consistently emphasized
three interests of a defendant that may be prejudiced by trial
delay: [1] oppressive pretrial incarceration, [2] anxiety and
concern of the accused, and [3] the possibility that the
accused's defense will be impaired by dimming memories and loss
of exculpatory evidence."  Ghailani, 73  F.3d at 50.  While the
delay at issue here was unfortunate, Santacruz's period of pre-
transfer incarceration is not in itself "oppressive" under the
case law in this Circuit.[4]   See Moreno, 789 F.3d at 81-82 & n.10

---

[4] The Second Circuit "ha[s] emphasized that 'the notion of a delay that
is "presumptively prejudicial" (i.e. long enough to trigger a Sixth
Amendment inquiry) should not be confused with a delay that is so long
as to cause "presumptive prejudice" (i.e. prejudice that need not be
specifically shown)' under the fourth Barker factor.  'The former
bears upon the need for a Barker analysis, whereas the latter bears
upon the merits of that analysis.'"  Cabral, 979 F.3d at 157 (quoting
Moreno, 789 F.3d at 78 n.3).

(concluding that 27-month delay triggered further analysis under
Barker but did not independently support Sixth Amendment claim);
see also Vasquez, 918 F.2d at 338 (noting that twenty-six months
incarceration in the pretrial period was a hardship and "must be
included in the assessment of prejudice" but finding that the
circumstances did not "approach the prejudice suffered by
defendants in cases where we have found a speedy trial
violation").

Similarly, Santacruz is unable to show that he suffered
from undue anxiety as a result of his incarceration.  The Court
does not doubt that his pre-arraignment detention and temporary
loss of representation caused him anxiety.  Santacruz, however,
has failed to show that he has experienced "undue pressures"
beyond the "considerable anxiety [that] normally attends the
initiation and pendency of criminal charges[.]"  United States
v. Powell, No. 95 Cr. 664 (CSH), 1999 WL 32930, at *5 (S.D.N.Y.
Jan. 21, 1999) (quoting United States v. Santiago-Becerril, 130
F.3d 11, 23 (1st Cir. 1997)); see also United States v.
Sterling, 763 F. App'x 63, 66 (2d Cir. 2019) (summary order)
(holding that an eight-month trial delay and claimed inability
to obtain necessary medical care does not establish anxiety and
concern sufficient to constitute prejudice).

Finally, as to the third interest—limiting the possibility
that the defense will be impaired—Santacruz has not demonstrated

24

that his defense has significantly suffered as a result of the delay.  In his Motion, Santacruz argues that he has suffered actual prejudice from the delay because while he was in Arizona, "his co-defendant had the opportunity to receive and review discovery and commence an investigation."  (Mot. at 14.) Santacruz has not, however, identified any witness or other evidence that has been lost or rendered unavailable as a result of the delay attributable to the Government.  The fact that his co-defendant received a four-month head start does not, in and of itself, establish that Santacruz's defense has been substantially impaired.  See Moreno, 789 F.3d at 81 ("Delay 'does not per se prejudice the accused's ability to defend himself' because the government bears the burden of proof when the case comes at last to trial.") (quoting Barker, 407 U.S. at 521).  Accordingly, the final Barker factor weighs strongly against Santacruz.

While "proof of particularized prejudice is not essential to every speedy trial claim," Doggett, 505 U.S. at 655, "courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice," United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997).  See also United States v. Cain, 671 F.3d 271, 297 (2d Cir. 2012) ("[W]e have generally required a showing of some significant trial-related disadvantage in order to establish a speedy-trial violation").

"The Supreme Court has instructed that where negligently caused delays are 'unaccompanied by particularized trial prejudice,' the delays in question 'must have lasted longer' than would otherwise be required for relief to be appropriate." Smith v. La Clair, 353 Fed. App'x 486, 488 (2d Cir. 2009) (summary order) (quoting Doggett, 505 U.S. at 657); see also United States v. Palmer, No. 14 Cr. 652 (PGG), 2021 WL 3932027, at *14 (S.D.N.Y. Sept. 1, 2021) ("Where . . . a defendant has shown no actual prejudice and the presumption of prejudice does not apply, a lengthy period of Government negligence is required to warrant dismissal."). Here, the delay attributable to the Government is insufficient to overcome the absence of prejudice. Accordingly, Santacruz's Sixth Amendment claim fails.

### C. Termination of Pretrial Detention Is Not Required Under 18 U.S.C. § 3164

Finally, Santacruz argues in the alternative that if dismissal of the indictment is not warranted, he should be released pursuant to 18 U.S.C. § 3164 because he has been detained for more than ninety days without trial. Section 3164 provides that the trial of any person "who is being held in detention solely because he is awaiting trial . . . shall commence not later than ninety days following the beginning of such continuous detention." 18 U.S.C. § 3164(a), (b). If a detainee's trial does not start within the ninety-day window,

"through no fault of the accused or his counsel," the Court must review "the conditions of release" and release the defendant from custody.  Id.; see also Godwin v. United States, No. 19-14273-E, 2020 WL 6342962, at *3 (11th Cir. July 13, 2020) ("The remedy for a violation of the 90-day rule is an automatic review of the conditions of release and release from further custody pending trial.").

The various excludable periods of time enumerated in § 3161(h) apply to the ninety-day clock established by § 3164. See United States v. Gonzales Claudio, 806 F.2d 334, 339 (2d Cir. 1986) ("permissible periods of delay under the Speedy Trial Act, 18 U.S.C. § 3161(h), are to be excluded in determining whether that Act's ninety-day limit for trial of detained defendants has been violated.").  As relevant here, § 3161(h)(6) excludes from the speedy trial clock "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted."  18 U.S.C. § 3161(h)(6).  When considering the purpose of this exclusion, the Second Circuit has previously noted:

> Congress clearly intended that, where appropriate, joint trials of defendants should continue to be available as a means of promoting judicial efficiency by avoiding duplicative proof at successive trials. It thus intended that reasonable speedy trial time be excludable under Section 3161(h)(7) when necessary to enable joint trials to go forward.

27

United States v. Pena, 793 F.2d 486, 489-90 (2d Cir. 1986)
(citing 18 U.S.C. § 3161(h)(6) (formerly (h)(7))).  "The effect
of [§ 3161(h)(6)] is that a unitary 'Speedy Trial Clock' is
applied to all of the defendants." United States v. Payden, 620
F. Supp. 1426, 1427 (S.D.N.Y. 1985) (citing United States v.
Piteo, 726 F.2d 50, 52 (2d Cir. 1983)).  Accordingly, in cases
involving multiple defendants, all defendants are governed "by a
single speedy trial clock" and a "delay attributable to any one
defendant is charged against the single clock, thus making the
delay applicable to all defendants." Pena, 793 F.2d at 489; see
also United States v. Vilar, 568 F. Supp. 2d 429, 444 (S.D.N.Y.
2008) (same).

Here, the parties do not dispute that Santacruz's ninety-
day clock began when he was arrested on January 29, 2022.
Santacruz argues that of the 115 days that elapsed between his
arrest in Arizona and his arraignment in this District, only ten
days can be excluded as reasonable under § 3161(h)(1)(F).  This
argument, however, overlooks the fact that the exclusions
attributable to Acosta during that period were applicable to his
ninety-day clock as well.  See United States v. Brown, No. 04
Cr. 0454 (LEK), 2005 WL 1417116, at *2 (N.D.N.Y. June 14, 2005)
(noting that courts that have addressed "the issue of whether

the grant of a continuance to one defendant . . . is applied to a codefendant have concluded that it is" (collecting cases)).

Since Acosta's arrival in this District on February 23, 2022, time has been excluded in orders issued by this Court and Magistrate Judge Gorenstein.  During Santacruz's first pre-trial conference, which took place on July 13, 2022, the Court excluded time to September 14, 2022, to provide Santacruz with the time necessary to file pretrial motions.  As the Court noted in its August 12, 2022, Order, the exclusions of time in this case have been based on the Court's finding that the "ends of justice served" outweighed the interests of the defendants and the public in a speedy trial.  (ECF No. 31.)

In his Motion, Santacruz argues that because he was unable to object to the exclusions related to Acosta, "[i]t would be the height of unfairness to now turn around and hold that those exclusions" apply to him.  (Reply at 5.)  Any objection, however, would have been denied on the grounds that that the ends of justice were served by the continuances.  See United States v. McFadden, No. 13 Cr. 284 (DRH), 2015 WL 6506945, at *4 (E.D.N.Y. Oct. 27, 2015) ("Exclusion of time may be done by the court on its own motion or on the government's motion, both of which may be done over a defendant's objection." (citation omitted)), aff'd, 689 F. App'x 76 (2d Cir. 2017); see also United States v. Jackson, No. 04 Cr. 801 (PKC), 2006 WL 238991,

at *1 (S.D.N.Y. Jan. 31, 2006) (recognizing court's authority to exclude time over defendants' objection under ends-of-justice exception (citing 18 U.S.C. § 3161(h)).  Additionally, the Court notes that the time at issue constitutes a "reasonable period of delay" under § 3161(h)(6).  See United States v. Payden, 620 F. Supp. 1426, 1431 (S.D.N.Y. 1985) (concluding seven-month delay caused by exclusions attributable to codefendant to be reasonable); see also United States v. Contreras, 216 F. Supp. 3d 299 (W.D.N.Y. 2016) (concluding thirteen-and-a-half months delay attributable to codefendants was reasonable and excluded from speedy trial clock under exclusion for delays attributable to codefendants with whom defendant was joined for trial).

In sum, the time since February 23 is properly excluded from Santacruz's ninety-day clock because "[a]ny delay attributable to one defendant applies to all codefendants." United States v. Muyet, 225 F.3d 647, 2000 WL 1275925, at *4 (2d Cir. 2000).  The period of time that elapsed between Santacruz's arrest on January 29 and February 23 is nonexcludable, with the exception of ten days allowed for transportation under § 3161(h)(1)(F).  Accordingly, fifteen-days of nonexcludable time has elapsed since Santacruz's arrest.  His § 3164 claim, therefore, fails and he is not entitled to release from custody pending trial.

**IV. Conclusion**

For the reasons set forth above, Santacruz's motion to dismiss the indictment is DENIED in its entirety, as is his alternative request to be released from custody pending trial. The Clerk of Court is respectfully directed to terminate the motion docketed at ECF No. 26.

**SO ORDERED.**

Dated:    New York, New York
          August 2**6** , 2022                  _____
                                                    John F. Keenan
                                         United States District Judge

31